## Matter of Karl

### In DEPORTATION Proceedings

### A-10981520

*Decided by Board March 9, 1964*

Respondent's reentry in October 1962 upon a false claim to United States citizenship following a 10-day vacation in Mexico constitutes an entry under section 101(a)(13), Immigration and Nationality Act, upon which to predicate a ground of deportation [*Rosenberg* v. *Fleuti*, 374 U.S. 449, distinguished.]

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude committed within 5 years after entry, and sentenced for a year or more; to wit: Interstate transportation of stolen motor vehicle.

Respondent is 21 years old, single, male, alien, a native and last a citizen of Hungary. He last entered the United States at El Paso, Texas, in October 1962, and on this entry is based the charge set forth above, that respondent was convicted of a crime involving moral turpitude committed within 5 years after entry. The special inquiry officer found that respondent is not deportable on this charge, because respondent's last entry did not constitute an "entry" under *Rosenberg* v. *Fleuti*, 374 U.S. 449, 10 L. ed. 2d 1000 (June 17, 1963). The acting trial attorney appeals to this Board from the special inquiry officer's decision, alleging that this entry is an entry as required by the statute and is not within *Fleuti*. The special inquiry officer's order will be withdrawn and the record reopened for consideration of respondent's application under section 243(h).

Respondent was born in Hungary on February 14, 1943. He believes that six months after his unauthorized departure he lost his Hungarian citizenship. He entered the United States on December 30, 1956, and was accorded the status of lawful permanent resident as of the date of his original arrival under the Act of July 25, 1958, relating to Hungarian refugees. His last entry was in October 1962 from Mexico at El Paso, Texas.

Respondent was convicted for check forgery in 1957 at the age of 15. He states that he was sentenced to imprisonment for 15 months. The record of that conviction is not a part of this record, but the special inquiry officer states that respondent was treated as a juvenile delinquent at that time (Tr., p. 16). On February 8, 1960, respondent was sentenced to "a period not to exceed his minority" in the United States District Court, District of Minnesota, upon a plea of guilty of having committed an act of juvenile delinquency in the matter of unlawfully transporting a stolen car in interstate commerce. He was then 17 years of age, so the period of his sentence was 4 years. He was paroled on February 1, 1962. Respondent was sentenced on February 6, 1963, for 2 years or "until his deportation could be accomplished," for a second offense of transporting a stolen car, committed on or about December 5, 1962. The respondent has been in the United States about 7 years, and he has spent almost 5 years of this time in penal institutions.

Karl testified that he made several trips into Canada and Mexico, that upon one return he was delayed about 45 minutes by the inspection routine. Thereafter, he claimed birth in the United States when he returned from Canada and Mexico, because he "didn't want to mess with the inspection routine if I showed my green card" (exh. 12). He testified that his trips to Canada at Vancouver were usually just overnight, because he had friends there. His vacation trip to Mexico in October 1962 was his only extended absence from the United States. He and two friends took a motorcycle trip to Mexico City for a period variously described as a week, 10 days, or 2 weeks. He had his alien registration (green) card with him, but, having found it less time-consuming to claim birth in the United States, he did not show his card.

Respondent contends that he cannot be deported for having committed a crime within 5 years after entry because his return to the United States was after a brief casual trip to Mexico and did not constitute an "entry" under *Rosenberg v. Fleuti, supra*. The trial attorney contends that the instant case is distinguishable on its facts from *Fleuti* for the following reasons: (1) Karl's entry in October 1962 was made after a *10-day vacation* to Mexico, whereas Fleuti went into Mexico and returned after "about a couple hours," to quote the Supreme Court decision. (2) Karl made an illegal entry into the United States from Mexico by a false claim of citizenship, whereas Fleuti on his return presented himself for inspection and was admitted as a lawful returning resident alien. While the Supreme Court decision does not state specifically that Fleuti returned legally, the Circuit Court of Appeals states that Fleuti "then re-entered as a returning

481

resident alien." [1] (3) The appeal seeks to establish that respondent's entry without inspection was, to quote the Supreme Court, "contrary to some policy reflected in the immigration laws." (4) Fleuti was returning to a lawful permanent residence, whereas the respondent was in the United States after several prior entries on a false claim to citizenship; the trial attorney contends that following these entries without inspection, respondent's residence in the United States was no longer lawful, and that to gain the benefit of the *Fleuti* decision, an alien must be returning to a lawful residence. These contentions were also argued before the Board by the Service representative.

The Supreme Court in *Fleuti* first refers to "the kind of *brief absence* from the country that characterizes the present case." The Court again refers to the length of time Fleuti was absent from the United States as follows: "The question we must consider, more specifically, is whether Fleuti's *short visit* to Mexico can possibly be regarded as a 'departure to a foreign port or place . . . [that] was not intended,' within the meaning of the exception to the term 'entry' created by the statute." The Court refers also to the facts that Fleuti made "*his afternoon trip,*" and that he was an alien "long resident in this country after lawful entry" who "*merely stepped across* an international border." The Court again states, "One major factor relevant to whether such intent can be inferred is of course the *length of time* the alien is absent." (Emphasis supplied throughout.) The special inquiry officer concluded that respondent's temporary absences of from one to 10 days from the United States were not "meaningfully interruptive of his permanent residence status," notwithstanding his "evasion of proper inspection as an alien upon his return from most of those temporary visits abroad," and that "the respondent's intent at time of departure must be the critical test of whether his permanent residence status" was interrupted under the *Fleuti* decision.

We disagree with the special inquiry officer's conclusion that the respondent's return in October 1962 does not subject him to the consequences of an "entry" sufficient to sustain the present charge. We think, under the particular circumstances of this case, that an absence of 10 days is too long to permit Karl to bring himself within the rule of *Fleuti*. His vacation trip took him as far as Mexico City and is in a very different category from a visit of a few hours which began and ended the same afternoon. We are not prepared to state at this time just where the line will be drawn on the issue of how long the visit must have been to make the return constitute an "entry." The length of the visit is, of course, not the only factor. Respondent intended to resume his residence in the United States at the end of his vacation,

---

[1] *Fleuti v. Rosenberg*, 302 F. 2d 652 at 653 (9th Cir., 1962).

but this intent alone certainly does not preserve to him the right to return to the United States illegally, knowingly evading inspection, following a 10-day absence from the country. We cannot stretch the *Fleuti* doctrine far enough to cover the facts in this situation.

The Supreme Court quotes with approval from *Di Pasquale* v. *Karnuth*, 158 F. 2d 878 at 879, wherein Judge Hand remarked that "it is . . . important that the continued enjoyment of . . . [our] hospitality once granted, shall not be subject to meaningless and irrational hazards." Karl, however, subjected himself repeatedly to the hazards of exclusion or deportation by making several departures and illegal entries by claiming birth in the United States. If the immigration statutes and the established techniques of inspection are to have any meaningful and rational application, it must be held that Karl made an entry from a foreign port or country under section 101(a)(13) of the Immigration and Nationality Act when he returned from Mexico in October 1962.

We are not prepared at this time to hold, as requested by the Service, that every entry without inspection following a visit outside the United States, no matter how brief, completely neutralizes the *Fleuti* holding.

The case will be remanded to the special inquiry officer to permit him to make a determination on respondent's application for withholding of his deportation to Hungary under section 243(h) on the ground that his deportation to that country would subject him to physical persecution. Because he intended to terminate the proceedings, the special inquiry officer did not dispose of this application.

**ORDER:** It is ordered that the special inquiry officer's order of November 22, 1963, terminating these proceedings be and is hereby withdrawn.

*It is further ordered* that the record be reopened for determination of the respondent's application under section 243(h) of the Immigration and Nationality Act.